Thank you. I'd like to reserve three minutes and also I'd like to thank the court for allowing me to appear by video. This case arises out of two lawsuits, two complaints. The first one is for payment under the contract, just the breach of contract under NRS 016. And the second complaint is a failure to pay overtime. And the overtime claim is under Nevada's equivalent of the FLSA, NRS 608018. If I could, I'd like to begin with the second complaint because I think the second complaint really serves the, fits the criteria of Burnside v. Pacific Kiewit. As the court may recall from the papers, the court, the district court assumed a NLRA or 301 LMDRA preemption and accepted the removal on federal question grounds and then proceeded to dismiss it primarily because in the court's own words, it had to use the collective bargaining agreement to figure out the regular rate. Regular rate being the rate we use for times one and a half for the overtime rate. What is the regular rate? What is the regular rate? Regular rates defined in the FLSA and in the Nevada administrative code is basically the hours worked divided into the total compensation for the work week. No, what is the compensation? Well, the compensation you could either get from the paycheck or you could look for the collective bargaining agreement for the calculation. Right. Do you know what the pay, do you know what the amount is in this case? No, I'm sorry. I do not know. It's a. You don't know the competence of the regular rate? At this stage, you do not know it? It varied by week, Your Honor. It's very hard to tell? No, it varied by week. Each week they took a, the gratuities or the percentage that was charged for the, for the banquets divided among the servers and put that into the payment, the gross payment, but did not pay overtime either on that. He's saying that's part of the regular rate, the gratuities. Well, if, if, if the rate, if those gratuities were not tips, that is, they were not the result of a discretionary payment by the, by the customer, we say they are commissions and therefore belong to the regular rate. But that's a legal question. It's not a collective bargaining question. Well, why isn't it a question of, why isn't it a question of the CBA? Because, Your Honor, in order to determine whether the CBA, whether these, these payments are gratuities or not, it doesn't matter what the CBA labels them all as. It's a matter of fact independent of the CBA. I can call it green or yellow or blue. It doesn't, it won't matter. It is what it is legally. That is, if, if it depends on the discretion of the, of, of the customer and it varies with the customer's generosity, then it's tips. If it depends on a surcharge that is uniformly imposed by the employer on the customer, then according to Merchant, M-E-C-H-M-E-T, Four Seasons Hotel, it's a, it's a commission. In fact, that is the way most servers are, banquet servers are exempted from overtime. They consider it commission in a retail operation. And commissions are more than one-half the compensation, and therefore, these people would, under, under the FLSA, be exempt. Under Nevada's state law, they would not be exempt because we limit the, the, the commission exemption to only to salespeople, and these people were not engaged in sales. So the answer to your question is you don't have to look through the CBA at all. In fact, you can throw out the CBA, take the check, take the paycheck, divide it by the hours worked. That gives you the regular rate. You don't need anything more. I mean, the Court said I would have to look through the CBA to find out what the, what the true regular rate is, but that's, I, I think A is incorrect, and B, even if they did, I think Levidius and Burnside both said looking through the CBA for mere calculations is not the, the, the type of examination or interpretation of the CBA that leads to 301 preemption. Aren't you claiming that the extra percentage that Mandalay charges also belongs to the Banquet Service? Yes. And that is in the first complaint, Your Honor. And that is the question of looking through the CBA. Now, to do that, you, you, you do have to get into the CBA. Well, that's a closer call. What? Don't you? I would have to say, I would have to say that one could make a decent argument that it's just like getting paid nothing. What's that? And then you don't have to look at the CBA. I'm sorry, I don't understand. I said, I'm sorry. I would say to Your Honor that that would be like saying if you don't get paid anything, you have to look to the employment agreement. In that case, I said there is a decent argument to be made, you have to interpret the CBA, but it's also possible to look at the CBA. Well, now, do you want to waive the CBA, the extra 3 percent, and say we don't have to deal with it? I would say that if you, if, if, if Your Honor split the difference and said we don't have to deal with the 3 percent and yet apply the 1.5 percent, 1.5 times for overtime, that's a result that would probably make sense. It would not be my favorite result, but it's a result that could be sustained or arguably sustained logically. But I don't think that the, you need to look at the CBA other than to calculate the amount. I think the CBA is clear. And I also think the law on the issue of whether, when the CBA is clear is a little more intellectually harder to, to fathom than it is, than when you just look at it for calculation purposes. So the answer to your question, Your Honor, is yes, I agree that if you decided that, that the overtime rate had to be calculated without reference to the CBA and was not preempted, but that the entitlement to the extra 3 percent was looking at the CBA, that would be a rational result, not necessarily the only rational result. I think we have about eight minutes left. Do you want to save this time for rebuttal or do you want to make some more points? I think we have your argument. No, I think, Your Honor, I would like to save time for rebuttal with the proviso that, well, the one comment is that the 301 jurisdiction for removal was not present on the second complaint. It was a separate complaint and there was no preemption, total preemption from that complaint justifying removal. Okay. Thank you, counsel. Thank you, Your Honors. Good morning, and I'm Elena Uchon. I'm going to do my best to move my glasses back and forth because I can't see you with them and I can't see my pages without them. So, Your Honor, these If you will need to move the microphone a little closer. Oh, certainly. Yeah. So they can hear you down at Pasadena. Oh. That's the most important thing. Don't keep your voice up wherever your eyes are. Well, I have to tell you, Your Honor, as a New Yorker, no one ever tells me they can't hear me. So I will – I'm going to remember this day for that reason alone. The Jacobs complaints are clearly preempted here. The result is clear from both Burnside and Levatas. This is not a case that could be more distinguishable from the Supreme Court decision in Levatas. The arguments that plaintiff makes ignore the overall policy under the LMRA, which is what the basis was for removal here, and most importantly I think they ignore the fact that the CBA must be interpreted in order to determine what the regular rate is and what, if anything, the plaintiff in a representative capacity is entitled to under that CBA as applying Nevada law. And the Lingle case, the U.S. Supreme Court decision in Lingle made this abundantly clear, that there are clearly circumstances under which a state law that is not negotiable or not waivable or whatever status it is that is going to be applied to disputed terms of a CBA require LMRA preemption, and that's what we have here. Well, Nevada law is clear. Overtime is paid at one and a half. I agree, Your Honor. We look at Article 17. We see that they get 17 percent of the banquet. What's the problem? We look at it. We calculate it. If, Your Honor, there were no dispute presumably under whether or not that provision had been breached. But you heard him say he would be willing to give up the 3 percent. I don't think he can, Your Honor. Why not? Because the law says that you cannot waive wages to which you are entitled. No, but he says now we're not entitled to them. We're going to waive it. If they want to dismiss their complaint at this point and the others. Let's say we agree with you on the commissions. Then what happens to overtime? Why do we have to interpret the CBA at all to calculate the regular rate? Because, Your Honor, there are disputes. This is a case just like Firestone. This case is a case in which there are disputed CBA terms that determine the regular rate and that when you have disputed terms that may impact the regular rate or in this case, Your Honor, whether or not overtime is owed at all, that is a classic case as decided in Firestone where the case is preempted. It is the province of the arbitrator to determine what those terms mean and how they are going to be applied and what, if any, amounts the plaintiffs are due. This is exactly what was presented in Firestone. Well, where does the CBA deal with overtime for banquet service? It does not deal with overtime for banquet service, Your Honor, and Mandalay Bay has never argued that there was a provision in the CBA that speaks to overtime expressly here, and there was no express waiver of that provision. And we did not argue that. So why then is it not a matter of State law? Well, Your Honor, it is a matter of State law to this extent that what, if any, amount the plaintiffs may ultimately be due will require an application of State law, but the fact that we're going to apply State law does not prevent preemption. As Lingle says quite clearly, when the application of State law requires an interpretation of CBA terms, then you have a preempted claim, just as in Firestone. But you know the Supreme Court makes that subtle distinction between looking at a CBA and interpreting it, and all you have to do is look to see that it's 17 percent. Look to see that there's 17 percent, and therefore, you would just add the 17 percent to their hourly rate, and you would get overtime? Well, there are two problems with that argument. Of course, the first is that they argue that there's a minimum wage. But the second argument, the second problem with that is, Your Honor, is that we have to determine whether or not a Nevada State law, which we contend, Your Honor, in any case, is an hourly rate. And the Nevada law. You're going too fast. Just go a little slowly and tell me that again. Sure. Yes. And let's take the dispute off the table. Let's take hypothetically there's no dispute about the gratuity, so we're just applying an hourly rate. So, okay. So if we were going to take the dispute as to the amount owed off the table, the problem then would be still what is included in the regular rate. Nevada law doesn't define that clearly. And when you look at Nevada Administrative Code 608.125, there's a definition of how you calculate overtime from which commissions is omitted. Right. And so if commissions are omitted, the question is, under this CBA, are they commissions or are they not commissions? And there has been two positions taken by plaintiff in this case in that regard, on top of which the question would be whether or not the scheme pursuant to this custom and usage of the trade, as in 17.01, was intended to exempt them. And you must interpret all those sections together, together with the NIC, the Nevada Administrative Code, and the Nevada statute, which is 608.126, I'm sorry, 018, and do and how much overtime would be due, what is included in that regular rate. That's why I believe, Your Honor, this is the case. That's mostly an interpretation of State law, 90 percent of it. Well, certainly there's going to be some interpretation of the State law, but as long as there are disputed terms under the CBA that must be applied, that's the province of the arbitrator, which is what Firestone said, is that to resolve a dispute, it would be necessary to apply Nevada law to determine the rights and obligations of the parties, then that case is a preempted case. Likewise, if the parties to the contract, like in Firestone, the parties to the contract must determine the regular rate under Nevada law, applying disputed terms of the CBA. Again, that is the province of an arbitrator and the grievance procedure. This case was dismissed because plaintiff failed to exhaust his administrative remedies, which has not been appealed, not because the case was preempted, although I understand one could follow from the other. In Firestone, the Ninth Circuit expressly affirmed this statement of the lower court. One could not determine whether or not the plaintiffs were receiving a premium wage rate for overtime under the CBA, making them exempt from overtime, without interpreting the agreement to determine what their regular rate was. And that's at 1066 at the Firestone decision. That's exactly what has happened here, Your Honor. And I realize the plaintiff now wants to change the nature of his complaint. There were plenty of opportunities for him to do so. He never did so. He has put on the table a breach of the CBA. And disputed terms. Right. But then the Second Amendment complaint contains no reference to the CBA, right? No. It does refer to the CBA, Your Honor. It does say that there's a breach of the collective bargaining agreement. But it is not the same case. I'd be happy to find that provision for you. Go ahead. No, you don't have to find it. Keep going with your argument. I'll take it. Certainly. The plaintiffs here negotiated a complicated compensation scheme with various provisions, all of which are intertwined and all of which must be interpreted together in order to determine under Nevada law whether or not these individuals are exempt and whether or not, if they are not exempt, what is included in the regular rate. I agree that the mathematics is not difficult. Once you know what is included in a regular rate, you may add that amount times it by 1.5 and get an overtime rate. But you must make the determination regarding regular rate and exemption first, and those require the application of the disputed CBA terms. This is not a case like Levatas. Well, is there any doubt at all as to where you start? The starting point is Article 17. Yes, Your Honor. And the amount that comes to the employee through that. And you can look at that and see how many hours the employee worked and get a regular rate, can't you? If, Your Honor, there was no dispute. All right. But he's dropping the dispute, as I understand it. I don't understand that exactly, Your Honor. What? He can waive it right now. He has waived it, I think. I'm not so sure, but perhaps he has. All right. Let's assume he's waived it. We look at the 17 percent. What's the problem? The problem then becomes whether or not under the statute, under the scheme that is in the CBA, as stated in 1701 in the custom and usage of the trade, whether or not these individuals are exempt from overtime as commission earners. It doesn't say it. It does not say they are exempt. Well, I think you're really pressing pretty hard to say that there's a waiver of overtime by that reference to the ---- Oh, no, Your Honor. I'm not saying there's a waiver of overtime. Excuse me if that was the impression I had. There is overtime, then. No, I'm saying they may be exempt from overtime. What's that? They may be exempt from overtime, not waiving overtime. Under Nevada law, to waive overtime, you've got to be pretty ---- you've got to get something for it. There's no indication they waived overtime. I agree, Your Honor. Okay. This is not a case of waiver. I agree. All right. So as far as a judge would go, you look at that, 17.5 percent, divide the number of hours. Right. Except for that you can also be exempt under ---- from overtime. But where does the exemption come? From ---- well, the statute explains exemption, but not entirely clearly. And then ---- Well, that's a matter of Nevada law. Yes, it is, Your Honor. All right. Well, then we're interpreting Nevada law. Well, if you have to apply Nevada law to disputed terms, and they have previously disputed the terms, as Mr. Thierman said, whether or not this is a gratuity or a commission is an issue. But more than that, I guess, Your Honor, is the question of whether or not the total scheme as set forth in Article 17 of the Collective Bargaining Agreement results in exemption if we're going to set aside the notion that there's a breach of the CBA. It seems to me you represent a sophisticated corporation. If they wanted to get a waiver of overtime, they should have said so. I agree, Your Honor. This is not a case of waiver. What? This is not a case of waiver of overtime. I agree, Your Honor. Well, then what overtime are they owed? Well, Mandalay Bay contends they're not owed any overtime, Your Honor, because they are exempt employees. And what makes them exempt? They are commission earners. That sounds like state law. I understand Your Honor's point. I think that the question, I think we understand your argument, which is, is there a sufficient, I mean, the question is, is there a sufficient dispute about exemption and about entitlement to gratuities or commissions that we have to resort to the Collective Bargaining Agreement? I think it's a fairly close question. Well, I understand, Your Honor. I suspect if it had been abundantly clear, we might not be here today. But I think that the fact that it is a close question and that these terms have been so heavily disputed up until this point makes that outcome clear, which is that there is interpretation required and that this is a province of the arbitrator. Plaintiff also made the point in his brief that this could be a partial exemption, that he would eliminate, as he has today, this, what he called this enhanced hourly rate from his argument. But again, under Federal law, I don't believe that he can do that. And, of course, Nevada law can't guarantee to somebody less than the Federal law guarantees. So I don't believe waiver is possible here. You cannot waive wages to which you are entitled. If he is entitled to that additional percentage, he can't waive them. Right. No, I agree with you on that. But I think the question is, is this a manufactured dispute? In other words, does this say, well, any time somebody raises an overtime question, then, well, I shouldn't say that. But is there a true dispute or is it manufactured by saying we really have to look to the document or not? And I take your point. Well, I thank you, Your Honor. And, you know, plaintiffs also argued that every time somebody seeks wages, it is not exempt because 608-100 requires a payment of all wages due, and that's the other side of the coin, and that's the decision, obviously, the Court has to make. I think based on the holding in Firestone, the outcome of this case is clear. This controversy is not about an undisputed amount of wages, and it is not a case where the rate of pay is undisputed, which was the case in most of the decisions of the Ninth Circuit and the Supreme Court in which preemption was not found to lie. This is these are cases in which the rate of pay and the amount of wages are expressly disputed, and for that reason we believe it is preempted. Thank you. Thank you very much for your argument. Just briefly, Your Honor. I think on page ER-46 on the excerpts of record in the 08-17-765 is the proposed second amended complaint. It has no reference whatsoever to the CBA. The point, I think, is that you don't even need to look at the CBA. If I were a deputy labor commissioner from the State of Nevada and I walked into an employer's place of business, and if the employer and the employee were having a dispute over what they ought to get paid for their base rate, I wouldn't care. I would look at the time cards and I would look at the paycheck and I would do some division, and that would get me the regular rate. That is exactly what is going for. Well, except that you dispute that in the second suit. So you've created the dispute. No, the first suit. Well, the first suit, yes. Thank you. So you've created the dispute that requires a resort to the CBA, haven't you? Well, but I don't need to have that dispute in order to have the second suit. I know, but both suits are in front of us and you've said, well, there is a dispute about what this means, and because we have to resort to the CBA to settle the first dispute, that also means we've got to go to the CBA to calculate the overtime, doesn't it? No, because regardless of the outcome, I guess I get 90 percent of it by way of the second suit, and if I lose or have to have the 10 percent or the 3 percent, in this case, preempted, then I guess it's preempted and I'll have to use the grievance procedure for that. But the only thing that's in dispute is the 3 percent, not the overtime. Right. And that's the dispute. No, but I think the argument is if that's in dispute, then we have to look at what Judge Hunt said, which is you've got to resort to the CBA to calculate the regular rate, because there's a dispute over what the regular rate is. So are you waiving your first suit now or not? Yes. Okay. Let me ask you about the custom of the trade. Yes. The argument is that the custom of the trade is that banquet servers are not paid overtime. That's correct. Now, to interpret that, where do we go to interpret that? The reason banquet servers are not paid overtime is because under the Federal FLSA, you can have commissions, which counsel admitted these are, that you can have commissions act for services. Whereas under the Nevada state law, you can only have commissions at least until 2009 for sales. Once these commissions become non-exempt commissions or earnings other than commissions, then the regular rate is one and a half times the total amount. So the way the industry works is because the amount of gratuity that's passed on to the employees, which is not discretionary with the customer, it's a surcharge, is considered commissions. They are not entitled to overtime because they are commissioned workers in a retail trade under the FLSA for the same reason they are, we say under state law, entitled to commissions from the years 2005 to 2009 when the statute was amended to follow the FLSA. So in essence, we are agreeing that these are commissions. There is nothing in Article 17 that says they're not commissions. They call it a gratuity, but there's no discretion. They don't describe any customer discretion whatsoever. And just for the sake of an example, if I wrote in the collective bargaining agreement that a man who works with his tools or a woman who works with her tools all day long is a supervisor, but they don't supervise anybody, the FLSA nor the state law would recognize that window dressing. And that's what we say this is, is window dressing. You look at facts. Right. But by the same token, you have to look at the CBA to figure out whether or not these employees are exempt under state law, right? No, because if the CBA doesn't mention a word about discretion by the customer, the CBA says you shall give a certain percentage. You shall charge a certain percentage. It doesn't mention anything about the customer. Yes, but I think I was raising a different issue, which is you still have to look at the CBA to figure that out, don't you? You have to interpret the CBA. Look at. No. So the question is whether you have to construe it or it's just a matter of referencing. Isn't that where we are in this case? Well, I suppose if I walked into a banquet and I saw that there was a bill, which is exactly the way I would do an audit, and I saw there was a bill that had 17 percent added to it automatically and you couldn't debate it, I wouldn't look at the CBA either. I mean, it's the same thing as if you see in a restaurant you have eight or more people. No, I understand that. Okay. If you see in a restaurant they have eight or more people, they add 17 percent, that is no longer a gratuity. That is a service charge. As soon as it becomes a service charge, without looking at the CBA, you get overtime under Nevada state law. If it is a gratuity coming from the customer, and then you look at the facts. You don't look at the CBA. It doesn't matter what the CBA calls it. The CBA could say this is ice cream. It doesn't matter. Throw out the CBA. Just look at the paycheck. Look at what's done in the field. Look at the customer and say, is it a gratuity? Well, it's not discretionary with the customer. That's a fact. That's not in reference to the CBA. That's a matter of law and it's a fact. Is it a fixed amount? Yes, it is. It's fixed because I see it on the bill. And how do I determine the rate? I look at the paycheck, which has all this division already done. And I divide the paycheck by the hours worked. I get the regular rate. QED, no reference to the CBA at all. And that's really what's going on here. We don't need it for the second issue. For the first issue, I will concede you kind of have to look at the CBA. That's why I've added that on. A kind of have to exception. Well, Levidius itself, Your Honor, Levidius itself calculated the amount of waiting penalties based on what the employee should have earned where the employer said we don't owe anything. So Levidius itself looked at the CBA and said we don't care what the CBA says. You get waiting penalties under California law. Therefore, I don't think it's unreasonable to say that if you have to do more than just look at it, maybe that's a good reason for abandoning the argument that you're entitled to. But in the case of the overtime, you don't have to look at it at all. It's a matter of facts existing wholly independently outside the CBA. If I wanted to get the extra 3 percent, then I would be into that murky territory. Thank you, Your Honor. Any further questions? Okay. Thank you for your argument, counsel. Thank you, counsel. Thank you very much, Your Honor. And thank you again for letting me appear electronically. We're pleased to do that. Thank you. The case of Jacobs v. Mandalay Corporation is submitted for decision.
judges: Hall, Noonan, Thomas